UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LORENZO ARNOLD, | ) | NO. EDCV 13-1811 AGR |
| Plaintiff, | ) | |
| v. | ) | |
| CAROLYN W. COLVIN, | ) | MEMORANDUM OPINION AND ORDER |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff Lorenzo Arnold filed this action on October 17, 2013. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on October 29 and November 4, 2013. (Dkt. Nos. 9, 10.) On May 20, 2014, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

## PROCEDURAL BACKGROUND

On July 30, 2010, Arnold filed an application for supplemental security income, alleging an onset date of May 1, 2007. Administrative Record ("AR") 14, 114, 114-20. The application was denied. AR 14, 61. Arnold requested a hearing before an Administrative Law Judge ("ALJ"). AR 80. On May 21, 2012, the ALJ conducted a hearing at which Arnold and a vocational expert testified. AR 33-57. On July 16, 2012, the ALJ issued a decision denying benefits. AR 14-22. On August 9, 2013, the Appeals Council denied the request for review. AR 1-3. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Arnold has not engaged in substantial gainful activity since July 30, 2010, the application date. AR 16. Arnold has the severe impairments of diabetes mellitus, hypertension, a history of congestive heart failure with mild to moderate diastolic dysfunction, sleep apnea, obesity and a depressive disorder. *Id.* He does not meet or equal a listing. *Id.* He has the residual functional capacity ("RFC") to lift and carry ten pounds occasionally and five pounds frequently, stand and walk for two hours out of an eight-hour day, and sit for six hours out of an eight-hour day. AR 17. He is limited to jobs involving simple routine tasks. *Id.* He is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the state and national economy that he can perform. AR 20-21.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

### C. Credibility

Arnold contends the ALJ improperly rejected his testimony regarding his need to elevate his legs several times a day and his inability to walk more than a block. JS 6, 17-18.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13)[2]

---

[2] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882

4

(quotation marks omitted). The ALJ may consider: (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ gave "some credence" to Arnold's testimony, finding some evidentiary support for his allegations that he was unable to engage in prolonged standing and walking due to shortness of breath, bilateral leg pain and swelling, and chest pain. AR 19. However, the ALJ did not find credible the extent of Arnold's alleged standing and walking limitations or his alleged need to elevate his legs. *Id.* The ALJ relied on three reasons for discounting Arnold's credibility: (1) the objective evidence did not support the severity of the alleged symptoms; (2) Arnold did not comply with treatment; and (3) Arnold had multiple arrests for parole violations and incarcerations. AR 17-20.

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ noted that treatment records showed no evidence that Arnold was advised to elevate his legs. AR 19. The ALJ noted that although Dr. Benrazavi, a consultative examining physician, found bilateral lower extremity swelling, she did not find that Arnold needed to elevate his legs. AR 19, 262. She characterized Arnold's gait as normal. AR 18, 262. She found that Arnold could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk up to six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. AR 19, 262.

---

F.2d 1453, 1457 (9th Cir. 1989).

Arnold acknowledges that Dr. Benrazavi did not say he should elevate his legs, but argues that she did not advise that he should not elevate his legs. The ALJ reasonably interpreted Dr. Benrazavi's opinion. Arnold also argues "there is indeed at least one record reflecting [an instruction to elevate his legs]." JS 8. He points to a "detailed master list of topics of discussion" used by nursing services that includes skin care and comfort measures of "[p]ositioning, e.g., elevate legs when sitting." JS 8; AR 382. However, the generic chart of discussion topics does not indicate that Arnold's treating sources specifically recommended elevating his legs as a treatment modality. Elevating the legs is merely listed as an example of comfort measures used in the management of congestive heart failure. AR 382. Arnold's remaining arguments are similarly unavailing.

"[U]nexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a relevant factor in weighing a plaintiff's credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ noted that treatment records reflect a history of persistent medication non-compliance, including non-compliance prior to Arnold's hospitalizations for uncontrolled hypertension and congestive heart failure exacerbation in April and May 2011. AR 17-18, 20, 190, 193, 196, 199, 210, 241, 245, 295, 297, 619, 642. The treatment notes specifically indicate congestive heart failure exacerbation from medication noncompliance. AR 18, 297. Arnold testified that he would "tend to forget" and "tend to run out" of his prescribed medications. AR 51-52. The ALJ found that Arnold's persistent noncompliance with treatment suggests that his symptoms are not as disabling as alleged.[3] AR 20.

---

[3] The ALJ noted that Arnold did not appear to follow his physicians' advice to lose weight. AR 18. Arnold argues that this was not a sufficient reason for discounting his testimony relating to limitations in sitting and walking due to his obesity. The Commissioner correctly argues that any error would be harmless because the ALJ cited other valid credibility factors supported by substantial

6

1  An ALJ may consider "ordinary techniques of credibility evaluation."
2 Therefore, an ALJ may consider criminal history in assessing credibility. Arnold
3 had multiple past arrests for parole violations and multiple incarcerations,
4 including incarceration for spousal abuse, which is generally a crime of moral
5 turpitude.[4] AR 176, 267; *see Morales-Garcia v. Holder*, 567 F.3d 1058, 1065 (9th
6 Cir. 2009) (stating that assault on a spouse may transform a simple assault
7 charge into a crime of moral turpitude).

8  The ALJ's credibility finding is supported by substantial evidence, and this
9 court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing
10 *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

### D. Development of the Record

Arnold contends the ALJ should have secured an updated consultative examination to assist him in interpreting an ECG, a chest x-ray, and treatment records dated after Dr. Benrazavi's consultative examination.

It is the claimant's duty to prove she is disabled. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *see* 42 U.S.C. § 423(d)(5)(A) (claimant must furnish medical and other evidence of his disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

"The ALJ . . . has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted). "An

---

evidence. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (so long as there remains substantial evidence supporting the ALJ's finding on credibility and the error does not negate the validity of that finding, an error is harmless and does not warrant reversal).

[4] Arnold acknowledges that a conviction of a crime of moral turpitude may, under certain circumstances, provide a basis for discounting a plaintiff's credibility. JS 19; *see Albidrez v. Astrue*, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007).

7

ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60.  This principle does not allow a claimant to shift her own burden of proving disability to the ALJ.  *Id.* at 459.

On February 23, 2011, Dr. Benrazavi, a consultative examiner, noted some irregularity of heart rhythm and possible element of right sided heart failure related to obesity.  AR 262.  She requested an ECG and chest x-rays to rule out congestive heart failure.  She noted that Arnold was "very obese and he may have element of right sided heart failure."  *Id.*  She found that Arnold could perform light work.[5]  *Id.*

The ALJ considered the medical evidence dated after Dr. Benrazavi's examination.  The ALJ noted that a March 9, 2011 ECG showed left ventricular hypertrophy.  AR 19, 263.  A March 14, 2011 chest x-ray showed old inflammatory disease and moderate cardiomegaly with no definite congestive failure.  AR 19, 264.  Basilar changes were suggestive of chronic bronchitis.  AR 19, 264.  ECGs on April 29, 2011, May 1, 2011 and May 31, 2011 were "abnormal," with atrial fibrillation and ST and T wave abnormality, probably digitalis effect.[6]  AR 356-62, 581-90.  Treatment records from May 31, 2011 indicate Arnold likely had congestive heart failure exacerbation from medication noncompliance.[7]  AR 18, 297.  Upon admission, his condition was noted to be "fair."  AR 574.  He had renal failure, diabetes, poor hypertension, and atrial fibrillation.  *Id.*  He was treated with medication and told to maintain a healthy diet.

---

[5] On April 15, 2011, a decisionmaker agreed with Dr. Benrazavi's opinion that Arnold could perform light work.  AR 62-68.

[6] The May 31, 2011 ECG indicated "no significant change" from the May 1, 2011 ECG.  AR 586.

[7] The record indicates previous hospitalizations in 2009 and 2010 for chest pain and headaches indicating medication noncompliance.  AR 190-221, 240-45.

AR 18, 576-77. The ALJ noted that in December 2011, Arnold reported mild shortness of breath and no chest pain. AR 18, 642. Based on the abnormal cardiovascular findings, the ALJ found that greater physical limitations were warranted. AR 19. He determined that Arnold had the RFC to perform sedentary work. AR 17.

Arnold argues the ALJ improperly rendered his own opinion and should have secured an updated consultative examination. The ALJ "has broad latitude in ordering a consultative examination" when there is ambiguity or insufficiency in the record. *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (citation and quotation marks omitted). Here, the record was neither ambiguous nor inadequate to permit a full and proper evaluation of Arnold's condition and physical impairments. The record contained the evaluation and opinion of Dr. Benrazavi, which the ALJ discussed and considered. AR 19, 258-62. The ALJ also discussed and considered the subsequent treatment records, ECGs and chest x-rays. AR 17-19. The ALJ did not ignore medical opinions or conduct his own medical research outside the record, which occurred in the cases on which Arnold relies. JS 32 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)).

The ALJ did not err.

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: June 12, 2014

ALICIA G. ROSENBERG
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28